MOTOR FINANCE AND GUARANTY CORPORATION *v.* GEORGIA
SECURITIES COMMISSION *et al.*

GILBERT, J   1. The act of 1920 (Acts 1920, p. 250 et seq.), creating the
"Securities Commission," empowers that commission to make rules and
regulations for the enforcement of said act, and to require statements as
to financial condition and the manner of selling securities, as a condi-
tion precedent to issuing a license for the sale of the latter; and in
section twenty-five it is provided that the commission shall have power
to "make or cause to be made such examinations of the issuer of securi-
ties within the provisions of this act,  .  .  at any time, both before and
after the issuance of a dealer's license, as it may deem advisable."
2. Where such a license has been issued authorizing a corporation to
sell designated securities until a specified date, and the licensee
engages in business under authority of the license, the mere return
of the license before expiration will not oust the commission of juris-
diction to conduct an examination into the affairs of the licensee.
3. The judge did not err in refusing an injunction.

*Judgment affirmed.   All the Justices concur.*

No. 4041.   APRIL 18, 1924.

Petition for injunction.   Before Judge Bell.   Fulton superior
court.   October 5, 1923.

By virtue of the act approved August 17, 1920 (Ga. Laws 1920,
p. 250), which created and established the "Securities Commis-
sion" and defined the powers and duties thereof, and provided for
the licensing of dealers in securities, the Georgia Securities Com-
mission licensed the Motor Finance and Guaranty Corporation for
a term of one year beginning January 1, 1923, expiring December
31, 1923, to issue and sell its stock.   Under that permit the corpora-
tion engaged in business.   On June 25, 1923, the Securities Com-
mission served notice on the Motor Finance and Guaranty Cor-
poration as follows: "As a result of its investigation this morning,
the Securities Commission decided that there were a number of
irregularities in the sale of stock to Mrs. Ella Beckes that would
entitle her, under section 35 of the amended Georgia securities law,
to a rescission of her contract and the return of the consideration
paid for the stock.   In view of the fact that the company still holds
the notes and any injustice done Mrs. Beckes can be remedied by
a return of the notes to her, the commission will drop the matter of
her complaint if the notes are returned in exchange for her stock
certificates.   As to the permission of the company to sell stock, the
commission orders that the suspension of the license to the Trus-

tees Security Company continue until the financial statement called for has been submitted to us. Our subsequent action will hinge largely on the showing made in that statement." In reply to this notice the corporation wrote a letter to the commission, as follows: "I have been advised by Mr. J. O. Partain, president of above-stated corporation, that he will be unable to complete his financial statement within the time I stated to you it would be prepared and ready for presentation to you—that is, by Monday, July first. The company has also been unable to decide just what disposition it desires to make of the Mrs. Ella Beckes matter, mentioned by you in your letter of June 25th. Mr. Partain advises that his company is entirely solvent, and that there is no doubt in his mind that he will be able to successfully finance it so as to make it a paying proposition. He feels, however, that the rules of the commission, in view of the present stringent money conditions, place quite a hardship upon any institution which is in process of organization from the sale of its stock. In fact, I am advised that this company has not sold more than half of the stock it was authorized to sell in Georgia. The officers of this company have had under consideration the financing of this company by eastern capital, and have had very encouraging support from those to whom the matter has been mentioned in the east. They feel that they will be able to finance this company entirely from eastern capital, which will in all probability be directed into this channel by persons who operate similar enterprises in the east, and who have successfully conducted them for the benefit of their stockholders. This being true, and the company's prospects for such financing at present bright, it has been decided to discontinue selling stock in this enterprise in the State of Georgia, and respectfully surrenders herewith its franchise to do business in this State of date January 1, 1923, which would otherwise expire by limitation on December 31, 1923." The license was enclosed in the letter. On July 10, 1923, the Georgia Securities Commission wrote to the Motor Finance and Guaranty Corporation, as follows: "At a special meeting this morning the Georgia Securities Commission instructed me to give you the formal notice required by section 19 of the Georgia securities law, to the effect that your license to sell stock in Georgia would be revoked at the next regular meeting of the commission in the office of the Secretary of State on Monday, July 16th, at 9

o'clock, unless you showed good and sufficient reason why such action should not be taken."

After receipt of this notice the Motor Finance and Guaranty Corporation filed a petition setting up the above-stated facts, and praying that the commission be "enjoined and restrained from taking any action whatsoever in the affairs of petitioner, and from making any official or other entry of cancellation or revocation of any alleged license of petitioner to do business in the State of Georgia, since no such license exists or has existed since June 30, 1923," and also that defendants be enjoined "from circulating any notice of any character to any one that said Securities Commission or any of the defendants have cancelled or revoked the license of petitioner to sell stock in Georgia;" also that defendants be enjoined generally from interfering with the conduct of petitioner's business; and for general relief. The defendants filed an answer setting up that the surrender of its license by the Motor Finance and Guaranty Corporation was merely a device upon its part to relieve itself of further investigation and the revocation of its license, and that it could not, by this action, evade the terms of the act mentioned. Upon interlocutory hearing the injunction was refused, and error was assigned upon that judgment.

*Arminius Wright,* for plaintiff.

*George M. Napier, attorney-general,* and *T. R. Gress, assistant attorney-general,* for defendants.